GREMILLION, Judge,
dissenting.
h Because I believe Butler v. Flint Goodrich Hosp., 607 So.2d 517 (La.1992), is controlling, I subscribe to the dissent of Judge Amy.
In light of Butler, it is perplexing that our courts continue to revisit this issue at all. This seems perplexing to the supreme court, too, if one considers its recent pronouncements. Our colleagues on the Fourth Circuit Court of Appeal faced a challenge to the constitutionality of the three-year prescriptive period in medical malpractice claims. See La.R.S. 9:5628. In Russo v. Kraus, 10-178-79 (La.App. 4 Cir. 9/29/10), 49 So.3d 941, the plaintiffs asserted a claim against a pathologist for failure to identify cancerous cells in a biopsy performed eight years before definite malignancy was diagnosed. The plaintiffs instituted a medical malpractice action and filed a petition for declaratory judgment holding the prescriptive period unconstitutional on the basis of equal protection and due process.
The trial court, as did the trial court in the present matter, scheduled a Sibley hearing. Before the hearing, the defendants filed exceptions of prescription and two motions for summary judgment. The trial court decided to hold the hearings on the exception and motions before holding the Sibley hearing. The motions for summary judgment were granted and the exception of prescription was not heard. The parties |2then entered into a stipulation that the claim was prescribed under Revised Statute 9:5628, but reserved the plaintiffs’ right to appeal. The trial court then granted the exception of prescription. Plaintiffs then appealed, arguing, among other things, that the trial court erred in ruling on the motions and exception without holding the Sibley hearing.
The fourth circuit reversed the trial court. Despite the supreme court’s rulings in Crier v. Whitecloud, 496 So.2d 305 (La.1986) that the statute did not violate equal protection, and in Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211, overruled on other grounds, David v. Our Lady of the Lake Hospital, 02-2675 (La.7/2/03), 849 So.2d 38, which held that the statute furthered a legitimate state interest, the fourth circuit held that the prescriptive statute did not further any legitimate state interest and violated equal protection and due process in denying plaintiffs access to the courts. It remanded the case to the trial court to determine whether any malpractice insurance crisis existed in 1975 or at any point at which the statute had been amended.
Writs were granted by the supreme court. Russo v. Kraus, 10-2463 (La.1/28/11), 52 So.3d 876. The order stated (emphasis added):
Writ granted. In light of the defendants’ stipulation to the latency of Janice Russo’s disease and this Court’s prior findings concerning the exis *1195 tence of a medical malpractice insurance crisis in the 1970s, the Court of Appeal erred in reversing the District Court’s judgment and remanding this matter for a Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985), hearing on these issues. See Crier v. Whitecloud, 496 So.2d 805, 308-09 (La.1986); see also, Branch v. Willis-Knighton Medical Center, 92-8086, pp. 9-10 (La.4/28/94), 636 So.2d 211, 215, overruled on other grounds in David v. Our Lady of the Lake Hospital, 02-2675 (La.07/02/03), 849 So.2d 38. Accordingly, the judgment of the Court of Appeal is hereby reversed, and the judgment of the District Court is hereby reinstated.

Id.

I wish to also address the majority’s attempt to limit the scope of its ruling. It | stakes pains to state that its decision is limited in its application to nurse practitioners. However, this is problematic for two reasons. First, the Olivers never assigned as error the application of the cap to nurse practitioners; rather, they want this court to declare that the cap itself, by virtue of its diminished value, is unconstitutional. We are generally precluded from considering issues not assigned as error. See Uniform Rules-Courts of Appeal Rules 13 and 212.4.
Second, the majority’s reasoning is not limited to the circumstances of nurse practitioners. It could apply to any health care provider. In fact, it specifically takes aim at health insurers dividends, doctors incomes, and the alleged escalating profit of the entire medical profession.
Furthermore, if the cap applies to nurse practitioners, its unconstitutionality necessarily affects all other qualified health care providers. I believe the cap does apply to nurse practitioners. Coverage of nurse practitioners by the MMA, and more specifically their status as qualified health care providers, was raised again in oral argument. It was noted that the legislature recently enacted Act 14 of the 2009 Regular Session, amending La.R.S. 40:1299.41 effective August 15, 2009, to include nurse practitioners among those providers specifically listed in the definition of health care providers. The significance of this amendment is that, were nurse practitioners not already covered by the act, the cap would not apply retroactively to Duhon.
The cap, which has gone without adjustment for 34 years, should be adjusted by the legislature. That the amount of the cap is now worth substantially less than it was in 1975 does not render it constitutionally infirm. Still, the legislature should consider the burden the cap places on its injured citizens and raise it. I also would respectfully suggest that the legislature index the cap in a responsible manner, which |4would obviate cases like the one before us now.
The critical question before this court is not whether problems with the medical malpractice cap should be addressed. The answer to that questions is clearly, “Yes.” Rather, the question, wrongly answered by the majority, is who should address the problem. The answer to that question is not this court, but the legislature.
Therefore, I would affirm the judgment of the trial court declaring the cap constitutional and the jury’s verdict awarding damages.